UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARIBALDI MASI,

                        Plaintiff,

        -against-

WILLIAM STEELY AND
EQUINOX HOLDINGS, INC.,

                      Defendants.

04 Civ. 6087 (RJH)

**<u>MEMORANDUM OPINION</u>**
**<u>AND ORDER</u>**

      This action arises from an alleged assault by defendant William Steely on plaintiff Garibaldi Masi at an Equinox Fitness Club ("Club") in New York City on August 7, 2003. (Compl. ¶ 9.) Plaintiff filed suit in this Court on August 6, 2004, stating two claims against Steely for intentional assault and battery, negligence, and recklessness, and one claim against Equinox Holdings, Inc. ("Equinox") for negligence in the ownership, operation, management, maintenance, and supervision of the Club. (*See* Compl. ¶¶ 8–12; 13–18; 19–23.) Steely moves to dismiss the complaint with prejudice, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, for plaintiff's failure to comply with court orders and discovery requests. For the reasons set forth below, Steely's motion is granted.

## BACKGROUND

      Plaintiff claims that Steely, without provocation, punched him in the face on August 7, 2003, breaking his cheekbone. (*See* Pl.'s Mot. for Reconsideration of Sanctions ("Pl.'s Mot. Reconsider."), at 1.) Steely has answered the Complaint, denying all of the allegations therein, and has asserted an affirmative defense of self-defense. He has also filed a counterclaim alleging malicious prosecution in connection with plaintiff's pursuit of a criminal complaint against

Steely, which was ultimately dismissed.  Defendant Equinox has also answered the Complaint, denying all of the allegations therein, and has cross-claimed against Steely for indemnification.

**First Request for Production of Documents**

On January 25, 2005, the parties submitted a Proposed Joint Scheduling Report that was endorsed by this Court.  (*See* Lankler Aff. (Feb. 3, 2006), at ¶ 2 & Ex. A.)  According to the Scheduling Report, fact discovery was to be completed by June 30, 2005.

On April 24, 2005, Steely served plaintiff with his First Request for the Production of Documents ("First Request").  (*See* Lankler Aff. ¶ 3 & Ex. B (First Request).)  Request No. 14 of the First Request demanded production of documents "concerning any legal actions to which Plaintiff has been a party in since 1995."  (*See* Lankler Aff. ¶ 3 & Ex. C (Deegan Aff. (Feb. 2, 2006), at ¶ 7).)  Under Rule 34 of the Federal Rules of Civil Procedure, plaintiff was obligated to produce these documents by May 4, 2005.  On April 27, attorney James Deegan, representing Steely at that time, went to the office of Edward Sivin, representing plaintiff at that time, to review documents from an unrelated lawsuit brought by plaintiff against the City of New York and the New York City Police Department in 2003 ("2003 Lawsuit").  (*See* Deegan Aff. at ¶ 7.)  Deegan has testified that he reviewed "two banker's boxes full of documents relating to Mr. Masi's lawsuit."  (*Id.* ¶ 4.)  Sivin agreed to duplicate all of these documents, with the exception of several folders for which he said he would prepare a privilege log.  (*Id.* ¶ 5.)  Today, more than two years later, these documents have yet to be produced in full.

The First Request also called for the production of all documents concerning plaintiff's medical treatment and condition.  (*See* First Request ¶¶ 3–5; 12–13.)  Plaintiff identified the existence of medical records from Bellevue Hospital, Dr. Momtaheni, and Dr. Burkes.  (*See* Letter from Manganelli (Mar. 24, 2006) ("Mot. for Further Sanctions"), at 2.)  It is clear from

correspondence that was produced that highly relevant medical records were in the possession of plaintiff's counsel, however, no such records were produced. (*See id.* at 9 & Ex. 1 (Letter from David M. Momtaheni, D.M.D. (May 12, 2005)).) It is also evident that Dr. Burkes, plaintiff's medical expert, reviewed a variety of medical records that also remain unproduced. (*See id.* 9 & Ex. 6; Letter from Manganelli (Oct. 3, 2006), at Ex. 1.)

### Second Request for Production of Documents

Defendants deposed plaintiff on April 26, 2005. (*See* Lankler Aff. (Feb. 3, 2006), at Ex. T (Masi Dep.).) During the deposition, defendants discovered facts that cast doubt on plaintiff's claim that he was a resident of New Jersey, and, therefore, whether there is diversity jurisdiction over plaintiff's claims. (*See* Letter from Lankler (Apr. 29, 2005), at 1.) Specifically, plaintiff testified that he had been a resident of New York until June 2004, at which time he moved to a friend's house in New Jersey where he resided on August 6, 2004, the date that he filed the Complaint in this case. (*Id.*) He said that his friend did not charge him rent and that he did not have a lease while he stayed there. (*Id.*) He further testified that the car he owned on August 6 was registered in New York, that he was at that time employed in New York, that the physicians whom he was seeing for his injuries were in New York City and Long Island, and that he received mail in New York in July 2004—all at the same time that he was allegedly living in New Jersey. (*Id.*) He also testified that he purchased and registered a car in New York in November 2004 and that he continued to hold a New York driver's license. (*Id.*)

As a result of these admissions, on May 6, 2005, Steely served plaintiff with his Second Request for the Production of Documents ("Second Request"). (*See* Lankler Aff. ¶ 4 & Ex. D.) The Second Request demanded production of documents that might indicate the address used by plaintiff at the time that he filed the Complaint, including: lease agreements; rent payments;

3

utility, telephone, cable, and internet bills; bank accounts; tax returns; vehicle registration and insurance documents; documents concerning employment, professional organizations, and plaintiff's real estate license; and calendars. (*Id.*) Responses to the Second Request were due by June 6, 2005, before the fact discovery deadline of June 30 in effect at that point. (*See Lankler Aff.* ¶¶ 2, 4.)

### September 16 Order

On May 13, 2005, the Court directed the parties to meet and confer by May 20, 2005, regarding any outstanding discovery disputes, and further directed the parties to submit letter memoranda setting forth any areas of dispute by May 27, 2005. (*See* Order [18].) On May 19, however, plaintiff's counsel filed a motion to withdraw, citing "irreconcilable conflicts" with his client. (Sivin Aff., May 17, 2005, at ¶ 2.) The Court stayed discovery until June 23 pending the resolution of this motion. (*See* Order [19].) On June 16 plaintiff hired attorney William House to represent him; accordingly, the Court granted Sivin's motion to withdraw and set a new deadline for fact discovery of August 31, 2005. (*See* Order [23]; Pl.'s Mot. Reconsider. 4.) At the end of July, having received no response to his Second Request, Steely's counsel sent a letter to House requesting plaintiffs' response and production of all documents responsive to the Second Request by August 3. Steely's counsel also renewed his request for copies of the documents relevant to the 2003 Lawsuit. (*See* Lankler Aff., Ex. E.) August 3 came and went, however, with no communication from plaintiff or his counsel. At a conference with the Court on September 16, 2005, the Court ordered plaintiff ("September 16 Order") to respond to the Second Request and to produce the documents related to the 2003 Lawsuit and another lawsuit filed by plaintiff against the City of New York in 1998 ("1998 Lawsuit"). The Court extended the fact discovery deadline beyond August 31. During the conference, plaintiff's attorney,

4

House, also sought leave to withdraw from the case.  Subsequently, on October 18, plaintiff informed the Court that he had retained a third attorney, Jeffrey Lessoff, as counsel.

### October 21 and November 21 Orders

On October 21, 2005, the Court held another conference at which it reiterated the directions to plaintiff in the September 16 Order and ordered the parties to make a joint submission to the Court delineating any outstanding discovery issues.  (*Id.* ¶ 9.)  The parties filed the joint submission on October 28.  Counsel for Steely informed the Court that plaintiff had neither responded nor objected to the Second Request, nor had he produced any of the documents named in the September 16 Order; counsel for plaintiff informed the Court only that Equinox had objected to a verbal request for documents made at the October 21 conference.  (*Id.* Ex. I.)  The Court addressed these discovery issues at a conference on November 15, which plaintiff himself attended with his counsel.  The Court issued an order ("November 21 Order") directing plaintiff to respond to the Second Request and to produce for inspection and copying all documents previously reviewed by Deegan (that is, the one-and-a-half boxes of documents relating to the 2003 Lawsuit) and all non-privileged documents related to the 1998 Lawsuit by December 15, 2005.  (*See* Order [26].)  The Court also established a new fact discovery and expert discovery deadlines of January 16, 2006.  (*See id.*)

Despite the fact that counsel for Steely wrote to Lessoff on December 6, 2005, to remind him of plaintiff's discovery obligations, plaintiff provided no response or document production.  (*See* Lankler Aff. ¶ 16.)  On December 16, the day after the court-ordered deadline, counsel for Steely sent a letter to Lessoff demanding that plaintiff comply with the November 21 Order by 5:00 p.m. on December 19.  (*See id.* ¶ 17 & Ex. L.)  On December 19, Lessoff hand-delivered to

5

counsel for Steely a set of documents one-and-a-half inches thick along with the following response to the Second Request, reprinted here in its entirety:

> PLEASE TAKE NOTICE that pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff, by HIS attorneys, THE LAW FIRM OF JEFFREY LESSOFF, hereby responds as follows:
>
> 1. Attached are copies of medical authorizations
>
> 2. Attached are all documents plaintiff has in his possession pertaining to a previous court case.
>
> 3. The documents in the possession of, plaintiffs previous attorney Myron Beldock, Esq. [a]re at his office for viewing and copying.  We have attached a HIPPA [sic] Authorization as requested for Mr. Beldock.
>
> 4. All other documents in plaintiffs posssssion [sic] have been exchanged previously.
>
> 5. We have no further documents at this time.  If we discover any other documents we will of course exchange those.

(*Id.* ¶ 18 & Ex. M.)  Needless to say, this so-called "response" was wholly unresponsive to Steely's discovery requests.  Plaintiff's production of documents was not only late, in violation of three Court Orders, but completely failed to satisfy the Federal Rules of Civil Procedure. Entire categories of documents were not produced, and no formal responses were provided with regard to each request indicating whether documents existed or whether such documents were being withheld.  Plaintiff produced only a small fraction of the documents related to the 2003 Lawsuit that had been viewed previously by Deegan.  Plaintiff did not provide a privilege log. Although plaintiff provided a number of medical releases for various healthcare providers, none of these releases contained enough information to be of use.

### January 11 Order

On December 22, 2005, counsel for Steely wrote this Court to request a premotion conference to discuss his proposed motion to compel discovery and seek sanctions.  (*See id.* ¶ 22

6

& Ex. N.)  Thereafter, on December 30, counsel for Steely sent a letter to plaintiff setting forth the deficiencies in plaintiff's December 19 response; however, plaintiff did not respond to this letter.  (*See id.* ¶ 23 & Ex. O.)  At a telephone conference with the Court on January 11, 2006— in which plaintiff himself participated—plaintiff's counsel, Lessoff, admitted that he had made no efforts to obtain the one-and-a-half boxes of documents related to the 2003 Lawsuit.  (*See id.* ¶ 25.)  The Court specifically ordered Lessoff to correspond with Sivin, plaintiff's first attorney in this suit, by the following day to obtain these documents.  The Court further ordered plaintiff's counsel to respond to all outstanding discovery requests within seven days or face sanctions ("January 11 Order").  Six days later, on January 17, Lessoff hand-delivered some documents to counsel for Steely.  Astonishingly, these documents were the *very same* documents produced to plaintiff by Steely on February 16, 2005: plaintiff had attempted to comply with the January 11 Order by merely copying and giving to Steely documents that defendant Steely had previously given to plaintiff.  Counsel for Steely sent a letter to plaintiff on January 19 drawing his attention to this fact and urging him to comply with his outstanding discovery obligations.  (*See* Lankler Aff. ¶ 27 & Ex. S.)

On February 3, 2006, Steely filed a motion to compel discovery and for sanctions against plaintiff for failure to adequately respond to the First and Second Requests.  Plaintiff did not file an opposition to this motion, but he did provide Steely with a supplemental response to the First and Second Requests on February 21.  (*See* Mot. for Further Sanctions 1 & Exs. 1, 2.)  Once again, plaintiff's responses were deplorably inadequate.  For example, in response to a request for all documents concerning the allegations in the Complaint, plaintiff's response was that no such documents existed.  (*See id.* Ex. 1.)  By way of further example, Request No. 5 of the First Request calls for the production of any and all documents concerning medical bills relating to

7

any physical injuries alleged in the Complaint.  Plaintiff responded that he had provided authorizations to Steely and that he had no responsive documents in his possession—no cancelled checks, statements from bank accounts, invoices, insurance forms, or any other records of medical bills having been paid.  (*See id.* 2 & Ex. 1 at ¶ 5.)  In response to Request Nos. 3 and 4 of the Second Request (relating to diversity jurisdiction), plaintiff produced cell phone bills for only two months and landline telephone bills for only three months out of a period of over thirty-six months.  (*See id.* 3–4.)  Plaintiff provided no phone bills for at least two phone numbers that he claimed to have used during this period.  (*See id.*)  Plaintiff produced no tax returns, which would have helped determine the date on which he changed his state of residence.  (*See id.* 6 & Exs. 1 & 4.)

### March 3 Order

The Court ruled on Steely's motion to compel and motion for sanctions at a conference held on the record and repeated its directions to the parties in an order issued March 3.  (*See* Tr. (Feb. 24, 2006), at 17–19; Order [33] ("March 3 Order").)  The Court granted Steely's motion to compel further production to the First and Second Requests and found that plaintiff had failed to respond in good faith to these requests.  (*Id.* Tr. (Feb. 24, 2006), at 17–18.)  The Court also found that plaintiff had simply defaulted in failing to respond to defendants' Second Set of Interrogatories.  The Court warned plaintiff that he had until March 10, 2006, to supplement his responses to outstanding discovery requests and that "[f]ailure to do so may result in dismissal of this action."  (*See id.* at 18–19; March 3 Order.)  The Court also granted Steely's motion for sanctions and directed him to submit to the Court a proposed order for plaintiff to pay Steely's attorneys' fees incurred in bringing the motion to compel and in attempting to secure compliance with the First and Second Requests.  (*See* Tr. (Feb. 24, 2006), at 19; March 3 Order.)  Finally, the

Court accepted the substitution of Robert Becker as fourth counsel for plaintiff.  (Tr. (Feb. 24, 2006), at 2–3.)

In response to the Court's March 3 Order, plaintiff provided Steely with supplemental responses on March 9, 2006.  Plaintiff's responses were again inadequate; entire categories of documents remained unproduced, including a CT scan provided to his attorney by his treating physician, medical bills, phone bills, financial statements including bank account statements and canceled checks, the checkbook register that plaintiff had admitted in open court was in his possession, tax returns, and vehicle registration and insurance records.  (*See* Mot. for Further Sanctions 1–7 & Exs. 3, 4.)  In addition, plaintiff failed to respond to Steely's Second Set of Interrogatories ("Second Interrogatories") before the March 10 deadline set by the Court.  When he did respond, four days late, his answers to the interrogatories were incomplete and raised more questions about missing documents than they answered.  (*See* Mot. for Further Sanctions 7–9 & Ex. 5.)

Plaintiff's March 9 response also indicated that Steely's counsel could view "[t]he box of documents that plaintiff has in his possession in reference to the prior litigations" at the office of his counsel.  (*See* Mot. for Further Sanctions, Ex. 3, at 1.)  On March 30, 2006, Eric Manganelli, an associate at Steely's counsel's law firm, went to Becker's firm to review these documents.  (*See* Letter from Lankler (Mar. 31, 2006), at 1; Manganelli Aff. ¶¶ 1–2.)  After Manganelli was seated in the conference room where the single box of documents was, plaintiff himself entered the conference room, removed approximately five inches worth of documents from the box, and sat down opposite from Manganelli. (Manganelli Aff. ¶¶ 4–6.)  When Manganelli asked Becker whether the documents removed by plaintiff were being withheld, Masi interrupted and loudly responded, "They're privileged."  (*Id.*)  Despite the fact that the time to assert such privileges

9

had long since passed, Becker said that he would provide Manganelli with "a list."[1]  (*Id.*)  Becker then left the room.  (*Id.* ¶ 7.)  Masi began slamming things on the table and uttering profanities directed at Manganelli.  (*Id.*)  Finding it impossible to work, Manganelli proceeded to leave, but as he was leaving Becker asked him to return and then told plaintiff not to speak to Manganelli again.  (*Id.* ¶¶ 8–9.)  Becker did not prevent plaintiff from remaining in the conference room unattended, however, and a few minutes after Becker left the room again, plaintiff sat down in the chair immediately adjacent to where Manganelli was sitting.  (*Id.* ¶ 10.)  When Manganelli removed a folder from the box, opened it, and began reviewing its contents, plaintiff snatched the folder from the table and placed it in front of himself.  (*Id.*)  At this point, Manganelli informed Becker that Masi was physically interfering with his review of the documents.  (*Id.* ¶ 11.)  When Becker indicated that Masi insisted on being present during the review and refused to remove him, Manganelli left.  (*Id.* ¶ 11–12.)  Plaintiff's conduct at the March 30 document production is itself sanctionable and further evidence of his intentional efforts to derail defendant's discovery in this case.

### Motion for Further Sanctions

As a result of plaintiff's willful and continuing failure to comply with his discovery obligations, Steely renewed his motion for the ultimate sanction of dismissal.  (*See* Mot. for Further Sanctions 10; Letter from Lankler (Mar. 31, 2006), at 2.)  While this motion was pending, the Court granted Becker's request to be relieved as counsel for plaintiff.  (*See* Order [35].)  On July 25, 2006, the Court entered an order formally granting Steely's motion for

---

[1] Plaintiff has never produced this list.  Instead, plaintiff's counsel sent a letter to Steely's counsel stating simply, "My client and I have gone through the box of documents . . . . There are approximately 100 pages of notes pertaining to communications with counsel concerning this case.  These notes are claimed to be privileged."  (*See* Letter from Becker to Lankler & Carragher (June 2, 2006).)  Besides being more than a year overdue, this claim of privilege fails to comply with the requirements of Rule 26(b)(5).  *See* Fed. R. Civ. P. 26(b)(5).

sanctions against plaintiff "for his willful failure to comply with defendants' discovery requests." (*See* Order [36].)  The Court ordered plaintiff to pay $22,576.43 in fees and expenses directly to defendant Steely.  (*Id.*)  Plaintiff filed a motion for reconsideration, which the Court denied on August 24, 2006.  (*See* Order [42].)

After plaintiff began representing himself in July, counsel for Steely forwarded to him, as a courtesy, copies of correspondence, discovery requests, and pleadings.  (*See* Letter from Manganelli (Oct. 3, 2006), at 1.)  Counsel for Steely also spoke with plaintiff on a number of occasions during which plaintiff inquired about what discovery was outstanding.  (*Id.*)  Plaintiff submitted additional documents to Steely on September 29 and October 1, 2006, but, once again, plaintiff's production was deficient.  For instance, plaintiff produced only a portion of the utility bills requested, and, although he submitted credit card statements, the statements for July and August 2004 were heavily redacted, making it impossible for defendants to know where purchases were made and thus where plaintiff was living during the time period surrounding the filing of his Complaint.  (*Id.* at 2 & Exs. 1 & 2.)  No check register, medical records, tax returns, or vehicle registration or insurance records were produced, although it is clear that relevant documents were in plaintiff's custody or control.  (*Id.* at 3–4.)  On October 6, 2006, the Court held oral argument on Steely's motion to compel further sanctions, which plaintiff opposed in a September 6 submission to the Court.

**DISCUSSION**

**I.    Applicable Legal Standards**

A district court may impose sanctions, including the dismissal of a complaint, for failure of a party "to obey an order to provide or permit discovery" or for failure to respond to interrogatories or document requests.  Fed. R. Civ. P. 37(b)(2), (d).  Dismissal is a "harsh

11

remedy" that is appropriate only in extreme situations. *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). Dismissal is appropriate only where a party "fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988); *Baba v. Japan Bureau Int'l, Inc.*, 111 F.3d 2, 5 (2d Cir. 1997); *accord Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1970). Additionally, it is incumbent on the Court to ensure that the disobedient party had notice that its conduct risked dismissal and had an opportunity to be heard. *See Spring Valley Water v. Cosco Industries*, No. 91 Civ. 410 (PKL), 1998 U.S. Dist. LEXIS 12199, 1998 WL 466110, at *2 (S.D.N.Y. Aug. 10, 1998).

The factors relevant in deciding whether to grant a motion for dismissal, when it is based on the failure to comply with a court order, or the failure to comply with discovery, include (1) the duration of the offending conduct, (2) whether notice was given that the conduct could result in dismissal, (3) whether the conduct prejudiced the movant, (4) the balance of the court's need to manage its docket against the parties' interests in being heard on the merits, and (5) the possibility that a lesser sanction would be effective. *See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852–54 (2d Cir. 1995). The Supreme Court has instructed that sanctions be weighed in light of the full record in the case. *See Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976).

The Second Circuit has counseled district courts to be "especially hesitant to dismiss for procedural deficiencies where . . . the failure is by a pro se litigant." *See Lucas*, 84 F.3d at 535 (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993)). Nevertheless, "all litigants, including pro ses, have an obligation to comply with court orders," *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988), and "willful intransigence"

12

will result in the dismissal of a pro se plaintiff's action with prejudice, *see Carvalho v. Reid*, 193 F.R.D. 149, 151 (S.D.N.Y. 2000). "'[A] party's persistent refusal to comply with a discovery order' presents sufficient evidence of willfulness, bad faith or fault." *Abreu v. City of New York*, 208 F.R.D. 526, 530 (S.D.N.Y. 2002) (quoting *Monaghan v. SZS 33 Associates, L.P.*, 148 F.R.D. 500, 509 (S.D.N.Y. 1993) (dismissing for unexcused failure to comply with two discovery orders)); *accord John B. Hull*, 845 F.2d at 1176–77 (upholding dismissal for failure to comply with three clear court orders that included two warnings of dismissal); *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49–50 (2d Cir. 1994) (affirming dismissal with prejudice of pro se litigant's complaint pursuant to Rule 37).

## II.   Discussion

It is evident to the Court that plaintiff's discovery misconduct has completely frustrated defendants' efforts to prepare their defense and ready the case for trial. Counsel for Steely has, in good faith, attempted over and over again to confer with plaintiff's counsel and plaintiff himself in an effort to obtain responses to discovery demands. (*See, e.g.,* Lankler Aff. Exs. E, K, L, O, and S.) The Court and counsel for Steely warned plaintiff that his noncompliance risked the imposition of sanctions under Rule 37. In addition, the Court warned plaintiff explicitly in its March 3 Order that his continued refusal to comply with his discovery obligations might result in dismissal of his case. Notwithstanding these warnings, plaintiff has flouted five court orders to comply with his discovery obligations. Plaintiff's actions have prejudiced defendants by denying them access to highly relevant information concerning (i) plaintiff's actual residence at the time that he filed this lawsuit; (ii) plaintiff's prior litigations where he alleged injuries at the hands of others; and (iii) plaintiff's medical condition and treatment since April 21, 2005. As

long as plaintiff fails to comply with discovery orders, the merits of this case elude determination.

Although plaintiff lays the fault for his discovery failures at his attorneys' doors, the Court finds that these failures are the fault of plaintiff, not his prior counsel.  Plaintiff himself has represented to the Court that he has been "very closely involved in this case."  (Tr. (Oct. 6, 2006), at 14.)  He has attended all court conferences, including: the conference on November 15, 2005, at which the Court established discovery deadlines; the telephone conference on January 11, 2006, at which the Court ordered plaintiff to respond to all discovery or face sanctions; the conference on February 24, 2006, where plaintiff acknowledged on the witness stand that he had failed to comply with his discovery obligations, and where the Court ordered additional discovery; and the conference on October 6, 2006, at which the Court heard argument from both plaintiff and counsel for Steely regarding Steely's motion for further sanctions.  Thus, plaintiff was warned and knew the consequences that would follow if he disobeyed the Court's Orders. The incident in which plaintiff physically interfered with Manganelli's review of documents at Becker's office is clear evidence of willful conduct by plaintiff to avoid the production of documents.  Although plaintiff has submitted an affidavit to the Court denying Manganelli's allegations (Masi Aff. Apr. 4, 2006), the Court does not credit plaintiff's version of events.

Even if the Court were to place part of the blame for plaintiff's discovery misconduct on his counsel, dismissal of plaintiff's claims would be appropriate in this case.  As the Second Circuit recently reiterated in reference to Rule 37(b) sanctions, "'[a] litigant chooses counsel at his peril, and here, as in countless other contexts, counsel's disregard of his professional responsibilities can lead to extinction of his client's claim.'"  *American Cash Card Corp. v. AT&T Corp.*, No. 99-7894, 2000 U.S. App. LEXIS 6318, 2000 WL 357670, at *5 (2d Cir. Apr.

6, 2000) (unpublished) (quoting *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979)).

The Court has considered lesser sanctions and concluded that they would be futile and ineffective to deter plaintiff from repeating his conduct. Plaintiff has failed to comply with five discovery orders from this Court, despite being warned that he risked incurring the sanction of dismissal. Although in July 2005 the Court ordered the relatively mild sanction of requiring plaintiff to reimburse Steely for expenses caused by plaintiff's failure to cooperate, plaintiff has yet to comply with that order and continues to argue that his attorneys, not he, are at fault. Under Rule 37(b)(2)(A), the Court might also order that the fact that plaintiff was not a resident of New Jersey on the date that he filed the Complaint be taken as established, but the result of this sanction would also be dismissal of his claims (for lack of subject matter jurisdiction).[2] Moreover, "[i]n the absence of any excuse or justification, imposing a lesser sanction and thereby permitting [plaintiff] to maintain this action despite flagrant disregard for discovery orders, would not serve Rule 37's goal of precluding disobedient parties from obtaining a benefit from disobedience." *Nieves v. City of New York*, 208 F.R.D. 531 (S.D.N.Y. 2002).

Thus, considering the full record before it, it is clear to the Court that plaintiff will never produce the documents that he is required by law to produce, nor does he intend to pay the monetary sanctions imposed by the Court, which is itself a basis for dismissal. *See* Fed. R. Civ. P. 41(b) (providing that an action may be involuntarily dismissed "for failure of the plaintiff . . . to comply with . . . any order of court"); *see also Dixon v. Caulfield*, No. 96 Civ. 3837 (VRW),

---

[2] In letters to the Court on October 23 and 26, 2006, plaintiff argues that the Court may not order the sanction of dismissal without first ascertaining whether it has subject matter jurisdiction. This is incorrect. Because of the Court's need to control the proceedings before it, "[a] district court has broad power to impose Rule 37(b) sanctions in response to abusive litigation practices." *Friends of Animals, Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334 (2d Cir. 1997).

1997 U.S. Dist. LEXIS 10454, 1997 WL 414163, at *5 (N.D. Ca. July 11, 1997) (dismissing case as a Rule 11 sanction where the plaintiff had previously failed to pay monetary sanctions and, accordingly, "[a] monetary sanction [would] likely [have] proven insufficient to achieve the necessary level of deterrence"). Accordingly, the Court issues the only meaningful sanction left to it under the circumstances, the dismissal of plaintiff's case. In light of plaintiff's continuous and willful failure to comply, the Court dismisses the Complaint with prejudice. *See Santos v. New York City Hous. Auth.*, No. 01 Civ. 1646 (WHP), 2003 U.S. Dist. LEXIS 3856, 2003 WL 1213335, at *5 (S.D.N.Y. Mar. 17, 2003); *see Baba v. Japan Travel Bureau Int'l, Inc.*, 111 F.3d 2, 5 (2d Cir.1997) (citing cases dismissing with prejudice cases brought by pro se plaintiffs).

## CONCLUSION

For the reasons stated above, defendant Steely's motion to dismiss the Complaint for failure to comply with discovery orders is granted with prejudice.

SO ORDERED.

Dated: New York, New York
June 12, 2007

Richard J. Holwell
United States District Judge